UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LAKEISHA N. HOLLOWAY,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>LAKE'S CROSSING MENTAL HEALTH CENTER, *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 2:16-cv-2823-KJD-BNW<br><br>**ORDER** |

Before the Court is defendants Lake's Crossing Center, Matthew Bowman, Louis Orozco, Steven O'Brien, Kenny Sapoulu, Abby Mascareno, Eric Kellemeyer, Debbie Lawson, Silvario Mendoza, and Ronna Dillinger's ("Lake's Crossing defendants") partial Motion to Dismiss (ECF No. 21) to which defendant Dr. H. Hale Henson joined (ECF No. 22). Also before the Court is Dr. Henson's own Motion to Dismiss (ECF No. 24). Plaintiff Lakeisha Holloway responded to both motions (ECF No. 27), and the defendants have replied (ECF Nos. 28, 29). Holloway also seeks leave to amend her complaint (ECF No. 30) to which the defendants responded (ECF Nos. 32, 33), but Holloway did not reply.

**I.　　Background**

Lakeisha Holloway brought this civil rights case under 42 U.S.C. § 1983 for alleged constitutional violations during her time as a pretrial detainee at the Lake's Crossing Mental Health Center. Lake's Crossing is a maximum-security psychiatric facility near Reno, Nevada. It houses both male and female inmates and provides "comprehensive forensic mental health services" to custodial defendants. See Lake's Crossing Center Overview, http://dpbh.nv.gov/About/Overview/Lake_s_Crossing_Center_Overview/ (last visited Nov. 13, 2019). Holloway arrived at Lake's Crossing on April 14, 2016. At the time, Holloway was one of

about five female detainees compared to approximately fifty male detainees. Compl. 12, ECF No. 8. Holloway claims that she was physically and sexually assaulted by male detainees during her time at Lake's Crossing. She also claims that Lake's Crossing officials ignored her risk of harm and retaliated against her for speaking out against the Lake's Crossing staff. Separately, Holloway alleges that Dr. Henson provided constitutionally inadequate medical care during her time at Lake's Crossing.

Holloway filed grievances with Lake's Crossing in July and August of 2016. When nothing changed, she filed her first complaint. The Court screened that complaint and found that Holloway failed to plead colorable claims for relief. Screening Order, ECF No. 4. It dismissed the complaint but allowed Holloway to refile, which she did on February 28, 2018. See Amended Compl., ECF No. 8. The Court screened that complaint and determined that Holloway pleaded three colorable claims for relief. Though Holloway styled her claims differently, the Court interpreted her facially valid claims as: (1) a claim for failure to protect under the Fourteenth Amendment; (2) a claim for retaliation under the First Amendment; and (3) a claim for inadequate medical care under the Fourteenth Amendment. Screening Order, ECF No. 11.[1]

Although Holloway had multiple run-ins with male detainees, her trouble with the Lake's Crossing staff began in June of 2016, after she was physically assaulted by inmate Michael Bell. Compl. at 16.[2] Bell asked Holloway to be his "girlfriend," and when Holloway declined, Bell "punched [her] in the mouth." Id. The assault occurred on the main floor of Lake's Crossing around 8:00 p.m. Id. Defendants Matthew, Louis, John Doe, and their supervisor, Steven, were the nightshift staff that evening, but they were nowhere to be found. Id. at 17. Defendant Matthew told Holloway that they were understaffed and did not have the manpower to monitor

---

[1] The Court's second screening order dismissed a verbal harassment claim with prejudice against other Lake's Crossing detainees and an excessive force claim against Lake's Crossing staff without prejudice. It also dismissed defendant Neighbors without prejudice because the complaint did not make any allegations against her.

[2] Holloway's complaint includes numerous allegations of misconduct by male inmates against her and other female inmates. See, e.g., Compl. at 13 (Holloway suffering verbal harassment by male inmate), 15 (female inmate hit in the face with a radio by male inmate), 24 (male inmate threatened to beat a female inmate), 24–25 (female inmate hit in the face with a laundry bag by male inmate). The Court has advised Holloway that although she has a right to bring claims on her own behalf, she does not have authority to pursue claims on behalf of others. See Screening Order at 5 n.2.

the area where the assault occurred. Id. at 16–17. The staff had advance warning that inmate Bell was violent because he had previously attacked defendant Matthew. Id. at 17. Yet, according to Holloway, they allowed Bell, a male inmate, unsupervised access to Holloway, resulting in a physical attack. Id.

Four days later, Holloway contacted the advocate hotline number, seeking help with the conditions at Lake's Crossing. Id. at 18. She also filed a grievance with Lake's Crossing directly, but things did not improve. Id. at 20. To the contrary, Holloway claims that Lake's Crossing staff began to retaliate against her for filing a grievance. In early July, Holloway's social worker, Vicki Erickson, her psychiatrist, Dr. Henson, and Lake's Crossing Director, Tom Durante decided to move Holloway to a room with camera surveillance. Id. at 21. When Holloway questioned the move, Erickson told her it was because Holloway had reported that she was "being abused and [that] people were coming into [her] room," and that Holloway's reporting "was a problem." Id. (internal citations omitted). The staff moved Holloway into the new room over her objection, and Defendants Kenny, Abby, Eric, Debbie, and John Doe had to physically force her into the room. Id.

Holloway's situation continued to deteriorate. In early August, Holloway was sexually assaulted by a male inmate. Around 8:30 p.m. on August 5, an inmate with the last name "Walker" approached Holloway from behind while she used the community telephone. Without warning, Walker removed his genitals and rubbed them against Holloway from behind. Id. at 25–26. Holloway reported the assault to an on-duty officer, defendant "Seal." Id. at 26. Seal, however, did not discipline Walker or perform an investigation of any kind. In fact, Seal ignored Holloway and "continued to play his chess game." Id. After Seal refused to help Holloway, she filed another grievance and was again met with staff retaliation. Holloway filed her second grievance with Lake's Crossing on August 8, 2016. Later that day, defendants Kennedy and Abby refused to deliver Holloway's personal mail. Holloway believes that Kennedy and Abby purposely returned the mail to sender because Holloway renewed her grievance against them. Id. at 26.

Shortly thereafter, Holloway began a court-ordered psychotic-drug regimen. Dr. Henson

oversaw the administration of the drug under the order. Dr. Henson started Holloway with 10 milligrams of the drug, which caused her to faint. Id. at 27. Holloway asked Dr. Henson if she could start at a smaller dose and gradually increase the dosage until her body could acclimate. Dr. Henson, bound by court order, refused. Aside from Holloway's initial reaction to the medication, she does not allege any lingering effects after her first dose.

More than a month passed without incident for Holloway, but in late September she suffered another incident with a male inmate. Around midnight on September 27, a male inmate named David Flores snuck into Holloway's room while she was asleep. Holloway awoke to find Flores touching her while propositioning her for sex. Id. at 27–28. Despite the multiple nightshift officers on duty that night and the surveillance cameras in the ward, Flores was able to sneak from his room into Holloway's without being noticed. Holloway again complained to Lake's Crossing staff to no avail.

Holloway then filed her first complaint. Each of the defendants have now moved to dismiss some or all of Holloway's claims, and Holloway again moves to amend her complaint.

**II.    Legal Standard**

The constitution guarantees indigent parties "meaningful access to the courts." Bounds v. Smith, 430 U.S. 817, 821–23 (1977). The Court understands that these parties' pleadings may lack the refinement of retained-counsel's filings. As a result, the Court holds their documents to a "less stringent standard[] than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Indeed, the Court construes pro se pleadings liberally and in that party's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). That leeway is limited to the allegations in the pleadings themselves. It does not exempt pro se parties from following the rules of procedure. Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995) (pro se parties are still "bound by the rules of procedure"). Accordingly, the Court will only dismiss a pro se complaint if it is clear that "the plaintiff can prove no set of facts" that would entitle her to relief. Estelle, 429 U.S. at 106.

The Court applies a two-step approach when considering a motion to dismiss. First, it accepts the plaintiff's well-pleaded factual allegations as true. Legal conclusions or mere recitals

of the elements of a cause of action, on the other hand, do not receive the assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Then, the Court considers whether the remaining factual allegations in the complaint allege a plausible claim for relief. Id. at 679. A claim is plausible if its pleaded facts allow the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. at 678. The Court assumes the material facts are true and views them in the light most favorable to the plaintiff. Williams v. Gerber Prods. Co., 552 F.3d 934, 937 (9th Cir. 2008). Any claim that does not meet that standard must be dismissed.

### III. Analysis

The Court's screening order interpreted the allegations of Holloway's complaint as claims for failure to protect against the Lake's Crossing defendants, failure to provide adequate medical care against Dr. Hanson, and retaliation against every defendant. Screening Order 8, 9, 10. Though the underlying allegations are the same, Holloway's complaint formatted the causes of action slightly differently. She alleged (1) an Eighth Amendment claim for cruel and unusual punishment; (2) a substantive due process claim; and (3) an Eleventh Amendment immunity claim. Compl. at 11, 31, 35. Holloway brings her claims against each defendant in both their individual and official capacities.

The Lake's Crossing defendants and Dr. Henson have separately moved to dismiss portions of Holloway's claims. The Lake's Crossing defendants move to dismiss Holloway's substantive due process claim and her immunity claim under the Eleventh Amendment. They did not move to dismiss Holloway's failure to protect or retaliation claims. Dr. Henson joined Lake's Crossing's motion as to Holloway's substantive due process claim. Dr. Henson also moves to dismiss Holloway's claims for inadequate medical care and retaliation. The Court will first evaluate the Lake's Crossing defendants' motion, which only covers the substantive due process and Eleventh Amendment claims. It will then analyze Dr. Henson's motion, covering each of Holloway's claims against the doctor.

#### A. Lake's Crossing Defendants' Motion to Dismiss

Holloway's complaint alleges that several known and unknown Lake's Crossing employees violated Holloway's substantive due process rights by failing to adequately protect

her while she was detained at Lake's Crossing. Holloway brings her claims against each defendant in their individual and official capacities. The Lake's Crossing defendants argue that they cannot be sued in their official capacities. They also argue that Lake's Crossing itself is immune from suit under the Eleventh Amendment, which does not provide Holloway a private right of action. Lake's Crossing is correct.

As an initial matter, Holloway cannot sue these defendants in their official capacities, nor can she sue the Lake's Crossing facility because it is immune from suit. The Eleventh Amendment prohibits an individual from suing a non-consenting state in federal court. U.S. Const. amend. XI; Beentjes v. Placer Cty. Air Pollution Contr. Dist., 397 F.3d 775, 777 (2005). That immunity from suit applies to the states themselves as well as to their "agents and instrumentalities." Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 636 (2001). The Eleventh Amendment only immunizes state agencies from lawsuits; it does not extend to smaller political subdivisions, such as counties or municipalities. Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency, 440 U.S. 391, 401 (1970).

Here, Holloway has not alleged any facts that Lake's Crossing does not qualify for immunity under the Eleventh Amendment, nor could she. Lake's Crossing is the very "agent or instrumentality" for which the Eleventh Amendment provides immunity. Lake's Crossing is a "secure facility of the [Nevada] Division of Public and Behavioral Health." NRS §§ 175.539(5)(b), 433.233(1)(d). The facility provides psychiatric services to defendants with mental disorders and aids the state's determination of whether a criminal defendant is competent to stand trial. It is founded and funded by Nevada law. If that were not enough, any judgment that Holloway receives against Lake's Crossing or against its employees in their official capacities would implicate Nevada public funds. These factors weigh strongly in favor of immunity. See Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997). Therefore, the Court dismisses Holloway's claims against the Lake's Crossing facility and against each defendant in their official capacities.

Holloway's stand-alone Eleventh Amendment immunity claim fails for the same reason. The Eleventh Amendment does not provide plaintiffs a private cause of action. See ITSI T.V.

Prods., Inc. v. Agric. Ass'n, 3 F.3d 1289, 1291 (9th Cir. 1993). To the contrary, it provides states and certain state agents immunity from suit. Qualifying state entities raise immunity as an affirmative defense. Admittedly, there are circumstances where states surrender their immunity. See, e.g., Sossamon v. Texas, 563 U.S. 277, 290 (Congress may waive a state's sovereign immunity by a "clear statement in the text of [a] statute [that] ensures that Congress has specifically considered state sovereign immunity and has intentionally legislated on the matter"). However, those circumstances are not present here, and even if they were, a stand-alone Eleventh Amendment claim would not be the vehicle to argue that immunity does not apply. Therefore, because the Eleventh Amendment does not provide a cognizable cause of action, the Court dismisses Holloway's Eleventh Amendment claim with prejudice.

Next, the Lake's Crossing defendants argue that Holloway's substantive due process claim fails because the defendants' conduct does not "shock the conscience." Dr. Henson joined the Lake's Crossing defendants' motion as to Holloway's substantive due process claim. Joinder, ECF No. 22. The "touchstone of due process" is protection against arbitrary actions of the government. Wolff v. McDonnell, 418 U.S. 539, 558 (1974). The government violates an individual's substantive due process rights when it exercises government power against the individual without a legitimate governmental objective. See Cty. of Sacramento v. Lewis, 523 U.S. 833, 845–46 (1998). Only the most egregious conduct is "arbitrary in the constitutional sense." Collins v. Harker Heights, 503 U.S. 115, 129 (1992). Indeed, only state action that "shocks the conscience" deprives an individual of substantive due process. Lewis, 523 U.S. at 847 (citing Rochin v. California, 342 U.S. 165, 172–73 (1952)). Whether a state actor's conduct "shocks the conscience" varies from case to case. Id. at 850; Betts v. Brady, 316 U.S. 455, 462 (1942). What is clear is that the government's actions must be more egregious than negligence and must *intend* to cause harm without a legitimate governmental justification. Lewis, 523 U.S. at 855 (emphasis added).

Holloway has not met that standard. Her allegations that these defendants failed to keep her safe from other inmates or provided inadequate medical care lack the malicious intent needed to demonstrate a substantive due process violation. At worst, Holloway's claims demonstrate

deliberate indifference to her risk of harm, which is more appropriately remedied under the Eighth or Fourteenth Amendment. See United States v. Lanier, 520 U.S. 259, 272 n.7 (1997) (where a constitutional claim is "covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"). Accordingly, the Court finds that Holloway has not pleaded sufficient facts to support a violation of her substantive due process rights and dismisses that claim against each defendant.

In sum, Holloway has not pleaded sufficient facts to support her substantive due process or Eleventh Amendment claims. Therefore, the Court dismisses those claims entirely. However, the Lake's Crossing defendants did not move to dismiss Holloway's failure to protect or retaliation claims. Therefore, those claims survive against the Lake's Crossing defendants.

### B. Dr. Henson's Motion to Dismiss

Having joined Lake's Crossing's motion to dismiss Holloway's substantive due process and immunity claims, Dr. Henson moves separately to dismiss Holloway's retaliation and inadequate medical care claims. Holloway's claims arise out of two distinct events during her confinement. The retaliation claim arises out of Dr. Henson's role in Lake's Crossing's decision to move Holloway from her assigned bedroom to a video-surveilled room after she filed her first grievance. Holloway believes that Dr. Henson and others only elected to move her to retaliate for the grievance she filed. Second, Holloway claims that Dr. Henson violated her Fourteenth Amendment right to receive adequate medical care based on the doctor's administration of anti-psychotic drugs, which caused her to faint and hit her head. Holloway claims that Dr. Henson maliciously administered an abnormally high dose of the drug, knowing that it would cause unwanted side effects.

Dr. Henson counters that the decision to move Holloway to a video-monitored room was not retaliatory. He argues that the move was not an adverse action and that Holloway does not allege that the move lacked a legitimate correctional goal. As for Holloway's claim of inadequate medical care, Dr. Henson was under court order to administer the drug. The doctor also points out that Holloway agrees that the dose he administered is considered a "starting dose."

Alternatively, Dr. Henson moves to dismiss Holloway's medical care claim inasmuch as it is a claim for medical malpractice because she failed to file an expert affidavit as required by NRS § 41A.071.

### 1. Retaliation

An inmate's right to contest the conditions of his confinement is protected by the First Amendment. Without that protection, inmates would be left without adequate recourse for injustices suffered during their confinement. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2004). There are four elements to a retaliation claim under the First Amendment in the prison context: (1) that a state actor took an adverse action against the detainee; (2) because of (3) that detainee's protected conduct, and that the action (4) chilled the detainee's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. Id. at 567–68. The state action need not completely chill or prevent the detainee from speaking; it is enough if the state action would chill a reasonable person from First Amendment activities. Id. at 568–69.

Holloway's retaliation claim began with Lake's Crossing's decision to move her to a video-monitored room. It also includes the Lake's Crossing defendants' actions after that decision, which include physically forcing her into the new room, stripping her naked, and later withholding her personal mail. The portion of the claim against Dr. Henson is limited to his role in the decision to move Holloway to the video-surveilled room. Holloway has not alleged that Dr. Henson was involved in withholding her belongings or physically forcing her into the new room. Holloway has not alleged that Dr. Henson elected to move her because she filed a grievance, nor does she claim that the decision lacked a legitimate correctional purpose. There is no allegation that Dr. Henson was even aware that Holloway filed a grievance before he voted to move her to the video-monitored room. The extent of Holloway's allegation is that Dr. Henson was "assigned to her caseload," and that a group of caregivers "came up with the decision to move [her] into a room with a camera." Compl. at 21. From there, Holloway's dispute was with her social worker Vikki Erickson, who allegedly told Holloway she was being moved because her complaints were "becom[ing] a problem." Id. Holloway does not allege that Dr. Henson even

knew there was a correlation between her grievance and subsequent move.

Similarly, Holloway does not allege any facts to suggest that Dr. Henson's part in the decision to move her lacked a legitimate correctional goal. At the time, Holloway already complained that other inmates had broken into her room (id. at 18), had assaulted her in her room (id. at 16), and had stolen her property from her room (id. at 18). Considering Holloway's constant run-ins with other detainees in her bedroom, the Lake's Crossing staff could very well have had a legitimate correctional purpose in its desire to monitor what was happening in Holloway's room. Yet, Holloway does nothing to contest that fact. The closest Holloway comes to alleging a lack of correctional purpose is her isolated interaction with social worker, Vikki Erickson. Erickson allegedly told Holloway that her reports of abuse at Lake's Crossing was a problem for her. Holloway's brief interaction with Erickson does not show that Dr. Henson lacked a legitimate correctional goal when—and if—he decided to move Holloway to the surveilled room. Accordingly, Holloway has not pleaded sufficient facts to support her claim for retaliation against Dr. Henson, and that claim is dismissed.

### 2. Inadequate Medical Care

Next, Holloway alleges that Dr. Henson deprived her of her Fourteenth Amendment right to adequate medical care by administering a dangerous dose of anti-psychotic drugs that caused her harm. On August 8, 2016, Dr. Henson administered the first dose of an anti-psychotic drug that he was court ordered to administer. Compl. at 27. He administered ten milligrams of the drug. Holloway experienced a reaction to that dosage, which caused her to faint. Id. She asked Dr. Henson to decrease the dosage and gradually increase it, but he declined. Id. Dr. Henson's initial dose and his refusal to lower that dose, Holloway claims, deprived her of her right to adequate medical care.

The Fourteenth Amendment guarantees pretrial detainees constitutionally adequate healthcare during their detention. Conn v. City of Reno, 591 F.3d 1081, 1094 (9th Cir. 2010), cert. granted, judgment vacated sub nom. City of Reno v. Conn, 563 U.S. 915 (2011), opinion reinstated, 658 F.3d 897 (9th Cir. 2011). A state official's deliberate indifference to a detainee's serious medical needs deprives the detainee of his Fourteenth Amendment rights. Farmer v.

Brennen, 511 U.S. 825, 828 (1994). A serious medical need exists where failure to provide medical treatment "could result in further significant injury or the unnecessary and wanton infliction of pain." Conn, 591 F.3d at 1095.

There are four elements to Holloway's claim: (1) the defendant made an intentional decision with respect to the plaintiff's conditions of confinement; (2) those conditions subjected the plaintiff to a risk of serious harm; (3) the defendant did not take reasonable measures to abate the risk even though a reasonable official would have taken such measures; and (4) by not taking those measures, defendants caused plaintiff's injuries. Gordon v. Cty. of Orange, 888 F.3d 1118, 1124–25 (9th Cir. 2018). This is an objective analysis and requires more than mere negligence. Id. at 1125. Thus, Holloway must "prove more than negligence but less than subjective intent—something akin to reckless disregard." Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016).

Here, Holloway has not alleged that Dr. Henson made an intentional decision regarding the conditions of her confinement or, if he did, that the decision was not reasonable. To be clear, Dr. Henson did not make the decision to medicate Holloway on his own. Compl. at 27 (Holloway began taking anti-psychotic drugs, which were "court ordered by the judge"). Under the order, Dr. Henson administered ten milligrams of the drug, and Holloway fainted. Id. Dr. Henson refused to adjust the dosage, but according to Holloway, he did not need to. Holloway agrees that doctors should administer between five and ten milligrams of the drug to first-time patients and then gradually increase the dosage. Id. Dr. Henson administered the high end of the appropriate first-time dose to her. Additionally, the fact that Holloway did not suffer any other side effects with the drug further supports Dr. Henson's refusal to reduce the dosage. Given that Dr. Henson started Holloway out on the appropriate dose, and she did not have any lasting side effects from the drug, a reasonable psychiatrist would not have considered Holloway's case a high degree of risk. Therefore, Holloway has failed to show that Dr. Henson was deliberately indifferent to her medical needs.

Alternatively, Dr. Henson moves to dismiss Holloway's medical-care claim under NRS § 41A.071. Section 41A.071 requires a plaintiff in a medical malpractice action to submit an

1 expert affidavit with the complaint to establish the necessary standard of care. The statute is
2 clear. The Court "shall dismiss" without prejudice any medical malpractice claim that is filed
3 without the necessary affidavit. NRS § 41A.071. Although Holloway styled her medical-care
4 claim under the Fourteenth Amendment, the substance of the claim is closer to professional
5 negligence. See Humboldt Gen. Hosp. v. Sixth Jud. Dist. Ct., 376 P.3d 167, 169 (Nev. 2016)
6 (interpreting a battery claim as a claim for medical malpractice). Holloway failed to file an
7 expert affidavit under NRS § 41A.071. Therefore, inasmuch as Holloway's claim is for medical
8 malpractice, the Court must dismiss it.

### C. Holloway's Motion to Amend

Finally, Holloway moves for leave to again amend her complaint to add the identities of previously unknown Doe defendants and to present "additional counts of [her] civil rights" complaint. Mot. to Amend 1, ECF No. 30. The Court's screening order permitted Holloway to substitute the identities of the Doe defendants as she learns them. See Screening Order at 12. Therefore, the Court grants Holloway's motion to amend inasmuch as it intends to assign names to the unknown Doe defendants.

The Court denies the remainder of Holloway's motion without prejudice for failure to attach a proposed amended complaint. Once a party has exhausted its amendment as a matter of course, it may not further amend the complaint without consent of the opposing party or leave of the Court. Fed. R. Civ. P. 15(a)(2). Generally, leave to amend is freely given, but the Court may deny amendment if it would unnecessarily delay the case, would cause undue prejudice, would fail to cure the deficiencies of the prior complaint, or would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962). Although Holloway is a pro se party, and the Court liberally construes her filings, she still must follow the rules of procedure. Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995). Local Rule 15-1(a) requires the party seeking amendment to "attach the proposed amended pleading to a motion seeking leave of the court to file an amended pleading." That requirement is especially important where, as here, the Court is deciding a motion to dismiss, because the proposed amendment may correct the deficiencies in the operative complaint. However, because Holloway failed to attach her proposed amendment, the Court cannot tell

whether allowing amendment would be fruitful or futile. Additionally, granting Holloway's motion to amend would cause undue delay as she will likely move to amend her complaint again to remedy the pleading deficiencies set out in this order. Therefore, the Court denies Holloway's motion to amend without prejudice.

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that the partial Motion to Dismiss (ECF No. 21) filed by Lake's Crossing defendants Abby, Debbie, Dillinger, Eric, Kenny, Louis, Matthew, Seal, Steven, and Lake's Crossing Mental Health Center, to which Dr. H. Hale Henson joined (ECF No. 22) is **GRANTED**. Plaintiff Lakeisha Holloway's substantive due process and Eleventh Amendment claims are **DISMISSED**.

IT IS FURTHER ORDERED that defendant Dr. H. Hale Henson's Motion to Dismiss (ECF No. 24) is **GRANTED**;

IT IS FURTHER ORDERED that Holloway's Motion for Leave to Amend Her Complaint (ECF No. 30) is **GRANTED** in part and **DENIED** in part without prejudice. Holloway may amend her complaint to name the Doe defendants and may again move to amend within thirty days of the entry of this order. Holloway is directed to attach a proposed order to her renewed motion to amend as required by Local Rule 15-1(a);

IT IS FURTHER ORDRED that Holloway's Motion for Clarification (ECF No. 31) is **DENIED AS MOOT**.

Dated this 25th day of November 2019.

_____
Kent J. Dawson
United States District Judge